UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JACQUES DODSON, SR.                                          CIVIL ACTION

VERSUS

WILLIAM EVERETT NICHOLS, ET
AL.                                                          NO. 22-00423-BAJ-SDJ

RULING AND ORDER

This is a lawsuit which the Court *sua sponte* dismissed as "time barred" and "obviously frivolous and vexatious." (Doc. 44 at 2–3). Now before the Court are three motions seeking sanctions variously under Federal Rule of Civil Procedure 11, (Docs. 19, 22, 25), Louisiana Rule of Professional Conduct 3.1, (Doc. 19), and 28 U.S.C. § 1927, (Docs. 22, 25). Two of these, filed by Defendants Defendants James B. Reichman, White Oak Servicing, LLC, and the Estate of Scott O. Brame, (Doc. 22), and Defendants Jack Brame and Red River Bank, (Doc. 25), seek sanctions against only Plaintiff's attorney, Kathleen M. Wilson. The third, filed by Defendant Scott M. Brame, seeks sanctions against both Dodson and Wilson. (Doc. 19). The Motions are opposed. (Docs. 24, 73). For the reasons that follow, the Motions will be granted.

I.  BACKGROUND

   a. Plaintiff's Lawsuits

Plaintiff filed this lawsuit alleging that the above-named Defendants and others committed civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), *see* 18 U.S.C. § 1964(c), in connection with the foreclosure in 2009 and sheriff's sale in 2010 of Plaintiff's property—the subjects of at least two

other lawsuits filed by Plaintiff against these same or similar Defendants over more than a decade. (Docs. 1, 19 at 7).

The Court dismissed Plaintiff's lawsuit as time barred because Defendants provided multiple letters, dating as far back as 2013, which explicitly mentioned the possibility of a RICO lawsuit, and which were sent to some of the Defendants here by an attorney who previously represented Plaintiff. (Doc. 44 at 1–2 (citing *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021) (describing that the statute of limitations is four years for civil RICO claims and "does not accrue until a plaintiff discovers, or through reasonably diligent investigation should discover, the injury")). As the Court explained in its dismissal order, "[i]t is evident from these letters that Mr. Dodson knew about the possibility of a RICO claim at least ten years ago and likely well before that." (*Id.* at 2). The Complaint itself was completely bereft of any factual allegations that would suggest that Plaintiff could not have reasonably discovered the alleged RICO violations more than ten years ago.

The statute of limitations was not the lawsuit's only problem, however. Final judgments have issued on at least two other lawsuits alleging the same or similar facts. In 2014, a pleading was filed by Plaintiff in the state court foreclosure action that "set forth what is essentially the same primary claim alleged in this suit and [that] sought to add as defendants several of the same parties to this action." (Doc. 19 at 10 (citing Doc. 19-11)). That pleading was dismissed following a trial, and the judgment became final when the Louisiana First Circuit Court of Appeal affirmed the

2

trial court's decision and no application for review was made to the Louisiana Supreme Court. (Doc. 63 at 7:2–8:9).

In 2020, Dodson, initially proceeding *pro se*, filed a completely different lawsuit in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, naming the same Defendants as in this case, among others. (Doc. 19-20). The petition there contained essentially the same allegations that Dodson set forth in 2014 and here—that all Defendants committed fraud in connection with the foreclosure and sheriff's sale of Plaintiff's property. (*Id.*). In fact, Dodson even mentioned RICO in the 2020 petition, writing that "Plaintiff avers that there may be a claim for damages pursuant to the RICO statute in that all parties colluded against to [sic] intentionally deceive him and take his property." (Doc. 19-20 ¶ 14). After that case was removed to this Court on the basis of that allegation, Dodson voluntarily amended the petition to remove the mention of RICO. (Doc. 19 at 12). The case was remanded for lack of jurisdiction in March 2021. *See Dodson v. Red River Bank*, No. CV 20-00290-BAJ-RLB, 2021 WL 806947, at *1 (M.D. La. Mar. 3, 2021) (Jackson, J.).

In its *sua sponte* remand order, this Court remarked that "[t]he fact that Plaintiff has amended his petition to omit all RICO-related references and allegations obviously reinforces the Court's conclusion that this claim lacks any foundation." *Dodson*, 2021 WL 806947, at *1 n.2. Although Wilson never enrolled in the Middle District case after removal, she represented Dodson in the state court action as early as October 22, 2020. (*See* Doc. 19-32).

3

Back in the Nineteenth JDC, numerous defendants, including Reichman, White Oak, Red River Bank, and Scott M., moved to dismiss Dodson's claims. (Doc. 19-30 at 5). The trial court granted the motions and dismissed Dodson's claims against those defendants, including the RICO allegations. (*Id.* at 6). During the hearing the court questioned Dodson about Defendant Scott M., who is the son of the deceased Defendant Scott O. (*Id.*). "Dodson conceded that there were no allegations in his petition or complaints against Scott M.," "explained that he 'got it confused' and 'made an honest mistake,'" and that he "could 'let [Scott M.] out'" of the litigation. (Doc. 19-30 at 6 n.3). Following the dismissal, the trial court denied Dodson's motion for a new trial, (*id.* at 7), and the First Circuit affirmed the judgments of dismissal in July 2022, (*id.* at 18).

In June 2022, as the Nineteenth JDC case remained pending against some defendants, Wilson formally enrolled as Dodson's counsel prior to a hearing on a motion to dismiss filed by a defendant that is not a party to the instant action. (Doc. 19-31 at 1). Wilson's enrollment at the time, just before the First Circuit affirmed the trial court's dismissal of numerous defendants, strongly supports the inference that she was aware that Dodson's RICO claims had been adjudicated.

Undeterred, Wilson filed the present lawsuit, alleging RICO violations on Dodson's behalf. As noted above, the claims are obviously outside of the statute of limitations. Additionally, because identical claims had already been adjudicated on the merits at the state level *two different times*, Dodson's claims are barred under the principle of res judicata, under which a final judgment on the merits of an action

4

"precludes parties . . . from relitigating issues that were or could have been raised" in the prior action. *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

As explained above, there is no doubt that Dodson's RICO claims could have been raised as early as 2013 and likely earlier, and indeed Dodson did raise the RICO claim in the 2020 state court action. Those claims were dismissed by the trial court and became final when Dodson failed to appeal the appellate court's decision affirming the trial court judgment. Wilson acknowledges that Dodson's claims are barred in her opposition to the Motions. (Doc. 73 at 1 ("Undersigned did not completely inspect the [state court action, and] after realizing that the matter was already litigated undersigned immediately attempted to withdraw . . . .")).

What's more, Dodson's Complaint is patently deficient with respect to its factual allegations, which are entirely conclusory. Shockingly, Wilson appears to have copied, at times whole cloth, the complaint from a 2007 RICO case filed in the Eastern District of Louisiana. And Wilson seems to have done a poor job, often referring to parties from the 2007 case in her own filing and copying entire blocks of text from the older case. *Compare* Doc. 1 ¶ 71 ("RICO protects the legitimate 'enterprises' of Plaintiff Able and the Board from defendants' employees, officers, managers, and agents who have committed the unlawful acts described in the 'pattern of activity' described below."), *with* Compl., Able Sec. & Patrol, LLC v. Louisiana, No. CIV.A. 07-1931, (E.D. La. April 17, 2007) ECF No. 1 ¶ 97 ("RICO protects the legitimate 'enterprises' of Claimant Able and the Board from defendants' employees, officers,

managers, and agents of who [sic] have committed the unlawful acts described in the 'pattern of activity' described below."); *compare* Doc. 1 ¶ 78 ("With the Board, Rogillio and the Corporate defendants as the enterprises, the person's existing separate and distinct from them are the employees, officers and agents thereof."), *with* Compl., Able Sec. & Patrol, ECF No. 1 ¶ 104 ("With the Board, Rogillio and the Corporate defendants as the enterprises, the persons existing separate and distinct from them are the employees, officers and agents thereof.").

### b. The Motions for Sanctions

This case was filed on June 24, 2022. (Doc. 1). Within days, Wilson and Dodson were notified of the issues described above and were urged to dismiss the case. (*See* Doc. 19 at 8 ("Counsel for Scott M. first notified Wilson of these issues shortly after the institution of this civil action via a telephone call on June 29, 2022.")). On August 9, counsel for Scott M. sent the draft Motion for Sanctions via email and certified mail to Wilson, urging Dodson to dismiss the Complaint within 21 days. (Doc. 19 at 1). Although Scott M.'s counsel did not receive a confirmation of receipt, (*id.*), Wilson moved to withdraw one week later, (Doc. 7). Wilson's attempt to withdraw was opposed by the same Defendants who ultimately moved for sanctions. (Docs. 9, 15, 16).

Scott M.'s counsel sent another warning that a motion for sanctions would be filed, and this letter was received on August 29. (Doc. 19 at 1–2). Attorneys for Jack Brame, Red River Bank, Reichman, White Oak, and Brame Estate sent similar warnings, with proposed Motions for Sanctions attached, on September 16. (Docs. 22-

3 at 3; 25-1 at 2). All three Motions for Sanctions were filed more than 21 days after Wilson received the warning letters. (Docs. 19, 22, 25). Neither Wilson nor Dodson dispute this. (Docs. 24, 73).

On February 7, 2023, Wilson moved to voluntarily dismiss the case, (Doc. 30), and the action was dismissed with prejudice, (Doc. 31). Soon after, however, Dodson, now proceeding *pro se*, moved for reconsideration of the Court's dismissal, explaining that the motion to dismiss had been filed without his knowledge or consent. (Doc. 34 at 1). A hearing on the motion for reconsideration was held on October 16, and was attended by Wilson, Dodson, and counsel for Defendants. (Doc. 42). Following the hearing, the Court granted the motion for reconsideration but immediately *sua sponte* dismissed the case with prejudice. (Doc. 44). Dodson has since appealed the dismissal. (Doc. 47).[1]

## II. LAW AND ANALYSIS

### a. Legal Standard

Federal Rule of Civil Procedure 11 provides, in pertinent part,

> (b) By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

---

[1] "As a general rule the effective filing of a notice of appeal transfers jurisdiction from the district court to the court of appeals with respect to all matters involved in the appeal." *Cordova v. Univ. Hosp. & Clinics, Inc.*, 92 F.4th 266, 275 (5th Cir. 2024), *cert. denied sub nom. Mire v. Univ. Hosp. & Clinics, Inc.*, No. 23-1192, 2024 WL 2805773 (U.S. June 3, 2024) (citations omitted). Nonetheless, an "exception is that . . . the district court retains jurisdiction to entertain and resolve a motion requesting attorney's fees or sanctions. The basis for this exception is that attorney's fees/sanctions are matters collateral to the merits of the action." *Id.*

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

...

(c)(1) If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

The purpose of Rule 11 is to deter baseless filings in the district court, and to spare innocent litigants and overburdened courts from the filing of frivolous lawsuits. *Cotter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Courts judge compliance with Rule 11's standards under an objective reasonableness standard, evaluating the circumstances as they existed at the time the challenged filing was signed by the lawyer or litigant. *Id.* at 1024. In light of the objective standard of reasonableness applied under Rule 11, an attorney's subjective good faith is not enough to immunize him from sanctions based on a Rule 11 violation. *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988). In deciding a motion under Rule 11, courts within the Fifth Circuit are required to determine whether the signatory has complied with the affirmative duties imposed under the rule. *Id.* at 875. District courts have wide latitude to impose sanctions under Rule 11 as district court rulings under Rule 11 are reviewed for abuse of discretion. *Whitehead*

*v. Food Max of Miss.*, Inc., 332 F.3d 796, 802 (5th Cir. 2003). District courts possess discretion in determining the nature of the appropriate sanction. *Thomas*, 836 F.2d at 876, 877.

All three Motions seek sanctions under Rule 11. Defendant Scott M.'s Motion also seeks sanctions under Louisiana Rule of Professional Conduct 3.1. (Doc. 19). The Motions filed by Defendants Jack Brame and Red River Bank, (Doc. 25), and Defendants Reichman, White Oak, and Brame Estate, (Doc. 22), also seek sanctions under 28 U.S.C. § 1927. Because the Court finds that sanctions are appropriate under Rule 11, it will not also impose sanctions under Rule 3.1 and § 1927. *Sec. & Exch. Comm'n v. Meta 1 Coin Tr.*, No. 1:20-CV-273, 2020 WL 1931852, at *6 (W.D. Tex. Apr. 21, 2020) (declining to impose duplicative sanctions because it would be "ineffective").

Defendants argue that sanctions are warranted under Rule 11(b)(1) because this "frivolous lawsuit was filed for improper purposes, namely to harass and needlessly increase the cost of litigation," (Doc. 19 at 22); under Rule 11(b)(2) because when this lawsuit was filed, Wilson "knew that the claims and other legal contentions contained in the RICO Complaint were not warranted by existing law or by any nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," (Doc. 19 at 15); and under Rule 11(b)(3) because "Wilson and Dodson also knew that the factual contentions contained in the RICO Complaint did not have evidentiary support and were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." (Doc. 19 at 20).

### b. Rule 11(b)(1)

The Court finds that sanctions are appropriate under Rule 11(b)(1) against Dodson and Wilson because improper purposes motivated the filing of this lawsuit. Given Dodson's multiple lawsuits in state court over identical or near-identical claims regarding the same foreclosure and sheriff's sale of Dodson's property, as well as Wilson and Dodson's knowledge of the costs of litigation, it is evident that this lawsuit could only have been brought for the improper purpose of escalating costs for Defendants. Wilson asserts that this lawsuit was not filed to harass or for another improper purpose. (Doc. 73 at 1). But based on the extensive history of Plaintiff's apparent vendetta against Defendants, his numerous losses in state court, Wilson's own involvement in Plaintiff's 2020 state court case, and the remarkably deficient nature of the Complaint filed here, Wilson's conclusory claim rings false. Moreover, Dodson's previous acknowledgement that Scott M. was improperly named in the second state court case, and by extension improperly named in the first state court case, further convinces the Court that this lawsuit was filed to harass Scott M., in addition to the other Defendants.

Final judgments have issued twice on Plaintiff's claims in state court, and Wilson was involved in the second of those cases. Wilson was therefore aware, or should have been aware, of both final judgments. Considering the present lawsuit against this backdrop demonstrates that it was filed for the improper purpose of continuing to prolong costly and meritless litigation.

### c. Rule 11(b)(2)

The Court finds that sanctions are also appropriate against Wilson[2] because the claims made in the Complaint are not warranted under existing law, which violates Rule 11(b)(2). As explained above, Dodson's RICO claims are time barred and precluded by res judicata. Dodson knew, and Wilson knew, or should have known, that the RICO claims, whether characterized as RICO claims or not, had been adjudicated twice already in state court, and that the statute of limitations on those claims had long since run.

### d. Rule 11(b)(3)

The Court finds that sanctions are appropriate against Wilson and Dodson under Rule 11(b)(3) because the factual contentions contained in the RICO Complaint did not have evidentiary support and were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Dodson, through numerous attorneys and on his own, has had more than 11 years to investigate this matter, yet his claims have been repeatedly dismissed on the merits. Additionally, as the Court explained when remanding the second lawsuit, "[t]he fact that Plaintiff . . . amended his petition to omit all RICO-related references and allegations obviously reinforces the Court's conclusion that this claim lacks any foundation." *Dodson v. Red River Bank*, No. CV 20-00290-BAJ-RLB, 2021 WL 806947, at *2 (M.D. La. Mar. 3, 2021). In its *sua sponte* dismissal order here, the Court explained that "[t]hose words

---

[2] "Monetary sanctions may not be imposed against a represented party for violation of Rule 11(b)(2)." *Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374, 378 (5th Cir. 2008) (citing Fed. R. Civ. P. 11(c)(5)(A)).

11

should have served as a siren, loudly alerting Ms. Wilson and Mr. Dodson against filing this obviously frivolous and vexatious case." (Doc. 44 at 3). Instead, of course, Dodson and Wilson did file this lawsuit.

That Wilson named Scott M. as a party despite Dodson's acknowledgment on the record in the Nineteenth JDC that Scott M. had been mistakenly included in prior lawsuits reinforces the Court's conclusion that Wilson failed to conduct a reasonable prefiling investigation.

While monetary sanctions are improper against a party for a violation of Rule 11(b)(2), "they may be awarded against a party [for a violation of 11(b)(3)] when a court determines *factual contentions* lacked evidentiary support." *Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374, 380 (5th Cir. 2008). Based on the foregoing reasons and description of the history between the parties, and particularly because Dodson's claims have been adjudicated as baseless on the merits two different times in state court, the Court finds that the Complaint's factual contentions lacked evidentiary support.

Further, for the above reasons and because the Complaint included entire paragraphs from the 2007 Eastern District RICO case, and she failed to even change the names of the parties, the Court must conclude that Wilson was not diligent in her pre-suit investigation and instead was flagrantly negligent, if not entirely reckless, in her failure to properly investigate Plaintiff's claims.

The Fifth Circuit has developed a series of factors to help determine whether an attorney has made an investigation into the facts sufficient to satisfy the duty

imposed under Rule 11 (b)(3). *Heisler v. Kean Miller, LLP*, No. CV 21-724, 2021 WL 5919507, at *5 (E.D. La. Dec. 15, 2021) (citing *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018 (5th Cir. 1994)). The factors are: (1) the time available to the signer for investigation; (2) the extent of the attorney's reliance upon his client for the factual support for the document; (3) the feasibility of pre-filing investigation; (4) whether the signing attorney accepted the case from another member of the bar or forwarding attorney; (5) the complexity of the factual and legal issues; and (6) the extent to which development of the factual circumstances underlying the claim requires discovery. *Id.* Each factor leads to the conclusion that Wilson failed to satisfy her duty under Rule 11(b)(3).

Because the statute of limitations had run years before, there was no urgency whatsoever with respect to Wilson's pre-suit investigation. Because of the overwhelming record evidence that Plaintiff's claims were invalid, it appears that Wilson only relied on Dodson himself as support for the Complaint, and likely completed no, or very little, independent investigation. Indeed, Wilson concedes that she "did not completely inspect" the second state court lawsuit before filing this one, essentially admitting an 11(b)(3) violation. (Doc. 73 at 1). Because Plaintiff's claims have been litigated multiple times in state court, the records of his prior claims are public, making any investigation easy. Additionally, Wilson's obligation to investigate thoroughly was enhanced by the complexity of the RICO statute. *See Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989) ("[A]n attorney's responsibility to conduct a reasonable prefiling investigation is particularly

13

important in RICO claims."). Finally, because Plaintiff's claims are legally invalid, both as time barred and because they have been previously adjudicated, no discovery was necessary to develop the claims.

For these reasons, the Courts finds that Wilson did not make reasonable use of the ample available opportunities to investigate Plaintiff's claims.

### d. The Constitutional and Statutory Prerequisites to the Imposition of Sanctions

Rule 11 sanction decisions must comport with due process. *Heisler*, 2021 WL 5919507, at *7 (citing *Childs*, 29 F.3d at 1027). The Court must ensure that notice and an opportunity to be heard have been afforded before Rule 11 sanctions may be imposed. *Id.* (citing *Childs*, 29 F. 3d at 1027). The requirement of an opportunity to be heard is generally satisfied by "[s]imply giving the individual accused of a Rule 11 violation a chance to respond through the submission of a brief." *Id.* (citing *Spiller*, 919 F.2d at 347). Due process concerns are satisfied in this case because both Wilson and Dodson were afforded notice and an opportunity to respond.

Second, Rule 11(c)(2) requires that a party serve a motion for sanctions on the opposing party at least 21 days before it is filed with the district court. "If, and only if, the 'challenged paper, claim, defense, contention, or denial' is not 'withdrawn or appropriately corrected' within the 21-day period may the motion then be filed" or presented to the court. *Margetis v. Furgeson*, 666 F. App'x 328, 331 (5th Cir. 2016) (quoting Fed. R. Civ. P. 11(c)(2)). As explained above, all three Motions satisfied the 21-day requirement.

### e. Nature of the Sanctions

Having described the conduct that violates Rule 11(b), and having found that the constitutional and statutory prerequisites are satisfied, the issue now becomes what the appropriate sanction is here. Once a violation of Rule 11 has been found, the district court is vested with considerable discretion in tailoring an appropriate sanction to further the purposes of Rule 11—namely, punishment, deterrence, and compensation. *Am. Airlines, Inc. v. Allied Pilots Assoc.*, 968 F.2d 523, 533 (5th Cir. 1992). The rule's language allows for an award of attorney's fees and other expenses "if imposed on motion," as is the case here. *Marlin, N.A.*, 533 F.3d at 379. An award of attorney fees is limited to "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Under the circumstances present here, the Court finds that an award of the fees incurred by Defendants in filing the Motions for Sanctions will serve the purposes of Rule 11 adequately.

The Court writes further to specifically admonish Plaintiff's counsel, Kathleen M. Wilson, for her careless and unprofessional handling of this matter. Any future violations by Wilson of the Court's Local Rules, Federal Rule of Civil Procedure 11, or the Louisiana Rules of Professional Conduct (as adopted by this Court in Local Rule 83(b)(6)) will result in the institution of disciplinary proceedings against her according to the procedure set forth in Local Rule 83(b)(12).

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Scott M. Brame's **Motion for Sanctions (Doc. 19)** be and is hereby **GRANTED**. Scott M. Brame will be awarded sanctions against Dodson and Wilson, totaling the reasonable attorney's fees expended in filing his Motion for Sanctions (Doc. 19).

**IT IS FURTHER ORDERED** that Defendants James B. Reichman, White Oak Servicing, LLC, and the Estate of Scott O. Brame's **Motion for Sanctions (Doc. 22)** be and is hereby **GRANTED**. These Defendants will be awarded sanctions against Wilson, totaling the reasonable attorney's fees expended in filing their Motion for Sanctions (Doc. 22).

**IT IS FURTHER ORDERED** that Defendants Jack Brame and Red River Bank's **Motion for Sanctions (Doc. 25)** be and is hereby **GRANTED**. These Defendants will be awarded sanctions against Wilson, totaling the reasonable attorney's fees expended in filing their Motion for Sanctions (Doc. 25).

On or before October 15, 2024, the above-named Defendants shall submit affidavits, along with any necessary supporting exhibits, documenting reasonable attorney's fees incurred in preparing their respective Motions for Sanctions.

Baton Rouge, Louisiana, this 25th day of September, 2024

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**